**Case No. 24-1663**

United States Court of Appeals
for the Eighth Circuit

UNITED STATES OF AMERICA,

*Appellee*

vs.

DEDRICK DESHON JORDAN,

*Appellant*

Appeal from the United States District Court,
Eastern District of Missouri,
Honorable Ronnie White Presiding

## CORRECTED APPELLANT'S BRIEF AND ADDENDUM

JEFFREY WALD
NELSON MULLINS RILEY
  & SCARBOROUGH LLP
380 Knollwood Street, Suite 530
Winston Salem, NC 27103
(T) (336) 774-3335
(F) (336) 774-3299
(E)jeffrey.wald@nelsonmullins.com

**Counsel for Appellant**

Appellate Case: 24-1663    Page: 1    Date Filed: 06/03/2024 Entry ID: 5399952

# SUMMARY OF THE CASE

On August 21, 2023, appellant Dedrick Deshon Jordan pleaded guilty to count one (lesser included offense) of the indictment, Conspiracy to Distribute Methamphetamine in violation of 21 U.S.C. § 846, 21 U.S.C. § 841(a)(1), and 21 U.S.C. § 841(b)(1)(B), a Class B Felony.

The Presentence Investigation Report ("PSIR") classified Jordan as a Career Offender under USSG § 4B1.1(a), after determining he had two prior qualifying crimes of violence committed when he was a child. The PSIR concluded his applicable guideline prison range was 235 to 293 months. PSIR 22.

On February 26, 2024, the district court, the Honorable Ronnie White presiding, sentenced Jordan to 235 months imprisonment.

Considering California Proposition 57, Senate Bill 1391, and *O.G. v. Superior Court of Ventura County*, 481 P.3d 648 (Cal. 2021), using Jordan's California juvenile convictions to enhance his sentence violates the Cruel and Unusual Punishment Clause of the Eighth Amendment and the Due Process Clause under the Fifth Amendment.

Appellant does not request oral argument and does not believe it would be necessary.

i

# TABLE OF CONTENTS

**Page**

Summary of Case ..................................................................................i

Table of Contents .................................................................................ii

Table of Authorities.............................................................................iii

Jurisdictional Statement.......................................................................vii

Statement of the Issue ........................................................................viii

Statement of the Case and Facts ........................................................... 1

    A.    Jordan Pleads Guilty and is Sentenced................................ 1

    B.    Statement of Facts ............................................................. 2

Summary of Argument........................................................................... 3

Standard of Review ............................................................................... 5

Argument............................................................................................... 5

    This Court Should Remand For Resentencing Because The District Court Deemed Jordan A Career Offender In Violation Of His Constitutional Rights, And Sentenced Him Using An Inaccurate PSIR ..................................................................... 5

    A.    *Roper*, *Graham*, and *Miller* Establish that Juveniles Must Be Treated Differently Than Adults......................................5

    B.    Under California Proposition 57, Senate Bill 1391, And *O.G. v. Superior Court Of Ventura County*, 481 P.3d 648 (Cal. 2021), California Law Again Recognizes That Children Are Different Than Adults...........................................................7

Appellate Case: 24-1663    Page: 3    Date Filed: 06/03/2024 Entry ID: 5399952

C.     Jordan's Career-Offender-Predicate Convictions Were Obtained Under California's Direct-File Statute ................10

     1.     Jordan's due-process rights were violated ....................11

     2.     Jordan's Eighth Amendment rights were violated.......15

D.     The PSIR Mis-Calculated Jordan's Prior Criminal History ................19

Conclusion ................20

Certificate of Compliance ................22

Statement of Virus Scan ................22

Certificate of Service ................23

iii

# TABLE OF AUTHORITIES

**Cases**                                                                                                                  **Page**

*Breed v. Jones,*
    421 U.S. 519 (1975) ...................................................................... 13

*Brown v. Precythe,*
    46 F.4th 879 (8th Cir. 2022) ...................................................... 20

*Graham v. Florida,*
    560 U.S. 48 (2010) ............................................................... *passim*

*Kent v. United States,*
    383 U.S. 541 (1966) ...................................................... viii, 11, 13-14

*Miller v. Alabama,*
    567 U.S. 460 (2012) ............................................................. *passim*

*O.G. v. Superior Court Of Ventura County,*
    481 P.3d 648 (Cal. 2021) ............................................. i, viii, 7-8, 14

*People v. Jordan,*
    No. B280325, 2019 WL 625199 (Cal. Ct. App. Feb. 14, 2019) ....... 19

*People v. Superior Ct. (Lara),*
    410 P.3d 22 (Cal. 2018) ......................................................... 11, 18

*Roper v. Simmons,*
    543 U.S. 551 (2005) ............................................................. *passim*

*Trop v. Dulles,*
    356 U.S. 86 (1958) ...................................................................... 17

*United States v. Asalati,*
    615 F.3d 1001 (8th Cir.2010) ....................................................... 5

Appellate Case: 24-1663    Page: 5    Date Filed: 06/03/2024 Entry ID: 5399952

*United States v. Coleman,*
    148 F.3d 897 (8th Cir. 1998) ........................................................ 20

*United States v. Comstock,*
    154 F.3d 845 (8th Cir. 1998) ........................................................ 20

*United States v. Fonder,*
    719 F.3d 960 (8th Cir. 2013) .......................................................... 5

*United States v. Grandon,*
    714 F.3d 1093 (8th Cir. 2013) ........................................................ 5

*United States v. Griswold,*
    No. 23-2580, 2024 WL 482678 (8th Cir. Feb. 7, 2024) ................. viii

*United States v. Moore,*
    No. 20-3212, 2021 WL 4786417 (8th Cir. Oct. 14, 2021) .............. 10

*United States v. Ramirez-Hernandez,*
    449 F.3d 824 (8th Cir. 2006) ....................................................... viii

*United States v. Washington,*
    515 F.3d 861 (8th Cir. 2008) ....................................................... viii

*United States v. Winfrey,*
    23 F.4th 1085 (8th Cir. 2022) .................................................. 5, 10

## Statutes and Rules

18 U.S.C. § 3231 ................................................................................. vii

21 U.S.C. § 841(a)(1) ............................................................................. i

21 U.S.C. § 841(b)(1)(B) ......................................................................... i

21 U.S.C. § 846 ............................................................................ i, vii, 1

Appellate Case: 24-1663    Page: 6    Date Filed: 06/03/2024 Entry ID: 5399952

28 U.S.C. § 1291 ...............................................................vii

F.R. App. P. 4(b) ...............................................................vii

California Proposition 21 ............................................... 8, 13

California Proposition 57 ........................................... *passim*

SB 1391...................................................................... *passim*

U.S. Const. amend. V ....................................................i, viii

U.S. Const. amend. VIII................................................ *passim*

## Other Authorities

USSG § 4B1.1(a).................................................................i, 1

USSG § 4B1.1(b)...........................................................vii, 19

Beth Caldwell, *Shifting the Paradigm: An Abolitionist Analysis of the Recent Juvenile Justice "Revolution"*, 23 Nev. L.J. 115 (2022) .....17

Katherine I. Puzone, *An Eighth Amendment Analysis of Statutes Allowing or Mandating Transfer of Juvenile Offenders to Adult Criminal Court in Light of the Supreme Court's Recent Jurisprudence Recognizing Developmental Neuroscience*, 3 Va. J. Crim. L. 52 (2015) ............................................... 13, 16

Appellate Case: 24-1663    Page: 7    Date Filed: 06/03/2024 Entry ID: 5399952

# JURISDICTIONAL STATEMENT

This appeal is from a final judgment entered following Dedrick Jordan's guilty plea to the federal criminal offense of conspiracy to distribute methamphetamine in violation of 21 U.S.C. § 846. Jordan was sentenced as a career offender under USSG § 4B1.1(b).

On February 26, 2024, the district court sentenced Jordan to 235 months imprisonment.

Jurisdiction in the district court was conferred by 18 U.S.C. § 3231 because Jordan's criminal conviction is a violation of the laws of the United States.

Under Federal Rule of Appellate Procedure 4(b), Jordan filed a timely notice of appeal on February 26, 2024.

The jurisdiction of this Court is established by 28 U.S.C. § 1291.

Appellate Case: 24-1663     Page: 8     Date Filed: 06/03/2024 Entry ID: 5399952

# STATEMENT OF THE ISSUE[1]

**Whether The Use Of Jordan's California Juvenile Convictions To Enhance His Federal Sentence Violates The Eighth Amendment's Cruel And Unusual Punishment Clause And The Fifth Amendment's Due Process Clause Under California Proposition 57, Senate Bill 1391, And *O.G. v. Superior Court Of Ventura County*, 481 P.3d 648 (Cal. 2021).**

*O.G. v. Superior Court Of Ventura County*, 481 P.3d 648 (Cal. 2021)
*Miller v. Alabama,* 567 U.S. 460 (2012)
*Kent v. United States*, 383 U.S. 541 (1966)
U.S. Const. amend. VIII
U.S. Const. amend. V

---

[1] Jordan plans to collaterally attack his guilty plea in district court on the ground that he was prejudiced by his trial counsel's constitutionally deficient representation. Specifically, Jordan claims that his plea was not entered knowingly and intelligently, and his attorney provided ineffective assistance of counsel in misadvising him of the guidelines range for his presumptive sentence and failing to properly communicate with him. By bringing this direct appeal, Jordan in no way waives or forfeits his right to file a motion to withdraw his plea in district court. He is not raising a plea-withdrawal or ineffective-assistance-of-counsel claim in this appeal because this Court has previously held that both claims are barred on direct appeal. *See United States v. Washington*, 515 F.3d 861, 864 (8th Cir. 2008) (stating that a claim that a plea was involuntary or unknowingly entered is not cognizable on direct appeal where the defendant did not move in the district court to withdraw the guilty plea); *United States v. Ramirez-Hernandez*, 449 F.3d 824, 826-27 (8th Cir. 2006) (establishing that ineffective-assistance claims are usually best raised in collateral proceedings where the record can be properly developed); *United States v. Griswold*, No. 23-2580, 2024 WL 482678, at *1 (8th Cir. Feb. 7, 2024) (refusing to address appellant's involuntary-plea claim on direct appeal).

Appellate Case: 24-1663    Page: 9    Date Filed: 06/03/2024 Entry ID: 5399952

# STATEMENT OF THE CASE

## A. Jordan Pleads Guilty and is Sentenced.

On August 21, 2023, Dedrick Deshon Jordan pleaded guilty to count one of the indictment (lesser included offense of conspiracy to distribute methamphetamine) in violation of 21 U.S.C. § 846, a Class B Felony.

The PSIR classified Jordan as a Career Offender under USSG § 4B1.1(a), after determining he had two prior qualifying crimes of violence committed when he was a 15- and 16-year-old teenager in California.

- Second-degree robbery, Los Angeles, CA, YA062601-01, committed in 2004 when Jordan was 15 years old.

- Second-degree robbery, Los Angeles, CA, YA06189202, committed in 2005 when Jordan was 16 years old.

PSIR 13, 17.

The PSIR determined that Jordan's total offense level was 33 and he was a category VI career offender; accordingly, the PSIR concluded his applicable guideline prison range was 235 to 293 months. PSIR 22.

In a sentencing memorandum filed on January 18, 2024, Jordan argued that his two juvenile California robbery convictions should not be used to calculate his criminal-history score. Specifically, he argued that when used to make him a career offender, the convictions overstated his

1

Appellate Case: 24-1663    Page: 10    Date Filed: 06/03/2024 Entry ID: 5399952

criminal history under *Miller v. Alabama*, 567 U.S. 460 (2012), *Graham v. Florida*, 560 U.S. 48 (2010), and *Roper v. Simmons*, 543 U.S. 551 (2005). Sentencing Memorandum at 1-2.

On February 26, 2024, the district court sentenced Jordan to 235 months imprisonment.

Jordan filed a timely notice of appeal on February 26, 2024.

**B. Statement of Facts.[2]**

Jordan admitted to being part of a conspiracy to distribute methamphetamine in the Eastern District of Missouri. Jordan and others received and stored narcotics and cash proceeds from the sale of narcotics at three separate residences in the Los Angeles area. Methamphetamine and other narcotics were shipped primarily from the Los Angeles area to Missouri through the U.S. mail and via couriers who drove vehicles with hidden compartments.

On June 18, 2020, investigators executed three residential search warrants in California, including at Jordan's residence. At Jordan's residence, investigators discovered $129,776 in U.S. currency, 190 grams of 97% methamphetamine, and a digital scale.

---

[2] These facts are drawn from the Guilty Plea Agreement. Add. 3; R. Doc 863.

Appellate Case: 24-1663    Page: 11    Date Filed: 06/03/2024 Entry ID: 5399952

The parties stipulated that Jordan was responsible for at least 1.5 but less than 4.5 kilograms of actual methamphetamine.

## SUMMARY OF ARGUMENT

Jordan was deemed a career offender because of two robbery convictions he received when he was 15 and 16 years old. At the time of those convictions, California law permitted these offenses to be tried in adult court without a prior transfer hearing or judicial order considering relevant factors such as public safety, the child's maturity, degree of culpability, or prior record of delinquency. Instead, California was a "direct file" State, whereby a prosecutor, acting on her own sole discretion, could directly file charges in criminal court, and therefore try a child as an adult. Since then, California has changed the law.

Now, under Proposition 57 and Senate Bill 1391, a 15-year-old cannot be tried as an adult. Moreover, to try a 16-year-old in adult criminal court, charges must first be filed in juvenile court, and the prosecutor must then move to transfer the case to criminal court. The case can be transferred to criminal court only after a juvenile court judge conducts a transfer hearing to consider various factors such as the child's maturity,

3

Appellate Case: 24-1663    Page: 12    Date Filed: 06/03/2024 Entry ID: 5399952

degree of criminal sophistication, prior delinquent history, and whether the child can be rehabilitated.

Under Proposition 57, Senate Bill 1391, and the principles of *Miller*, *Graham*, and *Roper*, the district court's use of Jordan's two juvenile convictions to make him a career offender and enhance his sentence violates due process and the Eighth Amendment. This Court should vacate his sentence and remand to the district court for resentencing.

Alternatively, this Court should remand for resentencing because the PSIR inaccurately calculated Jordan's criminal-history score before adding the career-offender enhancement. Specifically, the PSIR incorrectly gave Jordan three criminal-history points for two convictions from 2017—felon in possession of a firearm, and possession of a firearm with a prior violent conviction, BA443982-01—that were overturned on appeal. True, this error did not impact the district court's conclusion that Jordan was a category VI offender, because that classification was based on Jordan's status as a career offender. Nonetheless, the district court may have given Jordan a reduced sentence if it had been given an accurate picture of Jordan's criminal history. Therefore, Jordan should be resentenced with the benefit of an accurate criminal-history

4

calculation, including the understanding that his two gun-possession convictions from 2017 have been vacated.

## STANDARD OF REVIEW

This Court reviews: constitutional claims de novo, *United States v. Asalati*, 615 F.3d 1001, 1006 (8th Cir. 2010); the application of the guidelines de novo, *United States v. Grandon*, 714 F.3d 1093, 1096 (8th Cir. 2013); and sentences for an abuse of discretion, *United States v. Fonder*, 719 F.3d 960, 961 (8th Cir. 2013).

## ARGUMENT

**This Court Should Remand For Resentencing Because The District Court Deemed Jordan A Career Offender In Violation Of His Constitutional Rights, And Sentenced Him Using An Inaccurate PSIR.**

### A. *Roper*, *Graham*, and *Miller* Establish that Juveniles Must Be Treated Differently Than Adults.

"In a series of cases governing juvenile criminal sentencing, the Supreme Court established that the concept of proportionality central to the Eighth Amendment requires recognition that 'because juveniles have lessened culpability they are less deserving of the most severe punishments.'" *United States v. Winfrey*, 23 F.4th 1085, 1086 (8th Cir. 2022) (quoting *Graham v. Florida*, 560 U.S. 48, 68 (2010)). In *Roper v.*

5

*Simmons*, 543 U.S. 551, 578 (2005), the Court held that the Eighth Amendment "forbid[s] imposition of the death penalty on offenders who were under the age of 18 when their crimes were committed." In *Graham*, 560 U.S. at 82, the Court held that "[t]he Constitution prohibits the imposition of a life without parole sentence on a juvenile offender who did not commit homicide." In *Miller*, the Court held "that mandatory life without parole for those under the age of 18 at the time of their crimes violates the Eighth Amendment's prohibition on 'cruel and unusual punishments.'" 567 U.S. at 465. Instead, before imposing life without parole for those under the age of 18 at the time of their offense, the sentencing court must hold an individualized sentencing hearing to consider mitigating factors such as the child's "immaturity, impetuosity, and failure to appreciate risks and consequences"; "the family and home environment that surrounds him—and from which he cannot usually extricate himself—no matter how brutal or dysfunctional"; and "the circumstances of the homicide offense, including the extent of his participation in the conduct and the way familial and peer pressures may have affected him." *Id.* at 477–78.

6

*Roper*, *Graham*, and *Miller* teach "that children are constitutionally different from adults for purposes of sentencing." *Miller*, 567 U.S. at 471. The justifications for treating children different from adults for purposes of criminal sentencing are three-fold:

"First, children have a lack of maturity and an underdeveloped sense of responsibility, leading to recklessness, impulsivity, and heedless risk-taking." *Id.* (cleaned up).

"Second, children are more vulnerable … to negative influences and outside pressures, including from their family and peers; they have limited control over their own environment and lack the ability to extricate themselves from horrific, crime-producing settings." *Id.* (cleaned up).

"And third, a child's character is not as well formed as an adult's; his traits are less fixed and his actions less likely to be evidence of irretrievable depravity." *Id.* (cleaned up).

**B.    Under California Proposition 57, Senate Bill 1391, And *O.G. v. Superior Court Of Ventura County*, 481 P.3d 648 (Cal. 2021), California Law Again Recognizes That Children Are Different Than Adults.**

The United States Supreme Court has been clear. Juveniles are different from adults and should be treated differently for purposes of

7

sentencing. For years California law reflected these differences, as "a child could be tried in criminal court only after a judicial determination, before jeopardy attached, that he or she was unfit to be dealt with under juvenile court law." *O.G. v. Superior Ct. of Ventura Cnty.*, 481 P.3d 648, 650 (Cal. 2021) (citation and quotation omitted). In 1961, the California legislature set 16 years old as the minimum age that a juvenile could face prosecution as an adult by being transferred to criminal court. *Id.* But beginning in 1995, California moved away from the historical rule, eventually passing Proposition 21 in 2000, which gave prosecutors discretion to charge certain juveniles 14 or older directly in criminal court instead of juvenile court. *Id.*

After Proposition 21, "there was a sea change in penology regarding the relative culpability and rehabilitation possibilities for juvenile offenders … based upon developments in scientific research on adolescent brain development confirming that children are different from adults in ways that are critical to identifying age-appropriate sentences. *Id.* at 650–51 (citing *Roper*, *Graham*, and *Miller*) (cleaned up).

In November 2016, the public, consistent with these penological changes, passed Proposition 57, which implemented a series of criminal

8

justice reforms. *Id.* at 651. Among other things, prosecutors could seek transfer to criminal court for any felony offense, but for 14- or 15-year-olds, prosecutors could seek transfer to criminal court only for certain enumerated serious or violent offenses. *Id.*

"Senate Bill 1391 continued California's return to the historical rule," amending Proposition 57 "by eliminating the transfer of juveniles accused of committing crimes when they are 14 or 15 years old, unless they are first apprehended after the end of juvenile court jurisdiction." *Id.* Now, 16 is again "the minimum age for transferring a minor to criminal court." *Id.*

Under current California law, neither of Jordan's criminal convictions for robberies he committed as a juvenile would be valid. His conviction for second-degree robbery, YA062601-01, would be invalid under Senate Bill 1391 because it was committed when Jordan was 15 years old. His conviction for second-degree robbery, YA06189202, would be invalid because Jordan was only 16 years old at the time of the offense, yet he was directly charged in adult court and there was no judicial order transferring the case to adult criminal court.

### C. Jordan's Career-Offender-Predicate Convictions Were Obtained Under California's Direct-File Statute.

Notwithstanding the Supreme Court's insistence that juveniles are different than adults and must be treated differently for purposes of criminal sanctions, Jordan was treated identical to adults when he was tried and convicted in California criminal court for two robbery offenses he committed when he was 15- and 16-years-old. The direct-file statute in effect at the time allowed the prosecutor—without the need for prior approval from a judge—to file the cases in criminal rather than juvenile court. He was charged, pled guilty, and was sentenced in adult court. Now approximately 20 years later, these convictions continue to trail and haunt him, as they are the sole basis for him being treated as a career offender in this case.

To be clear, Jordan recognizes that prior precedent from this Court likely forecloses any claim that use of a recidivist enhancement like the career-offender enhancement violates the Eighth Amendment principles enunciated in *Roper*, *Graham*, and *Miller*. *See, e.g.*, *United States v. Winfrey*, 23 F.4th 1085, 1087 (8th Cir. 2022); *United States v. Moore*, No. 20-3212, 2021 WL 4786417, at *1 (8th Cir. Oct. 14, 2021). Nonetheless, to preserve future collateral and appellate review, Jordan does argue that

10

the use of these two juvenile convictions to enhance his sentence violates the rule of law enunciated in *Roper*, *Graham*, and *Miller*.

Jordan also recognizes that under controlling California law, Proposition 57 and Senate Bill 1391 do not automatically invalidate his sentences, because they were final at the time the laws became effective. *People v. Superior Ct. (Lara)*, 410 P.3d 22, 24 (Cal. 2018) (concluding that "Proposition 57 applies to all juveniles charged directly in adult court whose judgment was not final at the time it was enacted"). He therefore does not argue that those convictions are facially invalid.

Instead, Jordan's chief claim is one that neither this Court nor the California Supreme Court has addressed: namely, whether the use of Jordan's two California robbery convictions to enhance his federal sentence violates due process and the Eighth Amendment given the evolving standards of decency that Proposition 57 and Senate Bill 1391 establish.

### 1. Jordan's due-process rights were violated.

Nearly 60 years ago, the Supreme Court held that the District of Columbia violated a juvenile's due process rights by transferring him to adult court without following adequate procedures. *See Kent v. United*

11

*States*, 383 U.S. 541, 543 (1966). The child argued that the transfer was defective because no hearing was held, no findings were made, and the juvenile court stated no reasons for waiver. *Id.* at 552. The Supreme Court agreed, acknowledging that juvenile courts "should have considerable latitude within which to determine whether it should retain jurisdiction over a child" but "this latitude is not complete." *Id.* at 553. At a minimum, there must be "procedural regularity sufficient in the particular circumstances to satisfy the basic requirements of due process and fairness, as well as compliance with the statutory requirement of a 'full investigation.'" *Id.*

Although the Court did not consider the underlying merits of whether the child should be transferred to adult court, Justice Fortas, writing for the majority, pointedly stated that "there is no place in our system of law for reaching a result of such tremendous consequences without ceremony—without hearing, without effective assistance of counsel, without a statement of reasons. *Id.* at 554. It's true that the result in the case was reached in part by the juvenile court's failure to abide by statutory transfer procedures. But not entirely. The Court's decision was based, at least in part, on constitutional due process standards. *Id.* at 557

12

(holding that reversing the transfer order "is required by the statute *read in the context of constitutional principles* relating to due process and the assistance of counsel") (emphasis added).

While "the Court has never attempted to prescribe criteria for, or the nature and quantum of evidence that must support, a decision to transfer a juvenile for trial in adult court," *Breed v. Jones*, 421 U.S. 519, 537 (1975), the procedures used "must measure up to the essentials of due process and fair treatment." *Kent*, 383 U.S. at 562.

Ironically, many States purported to comply with *Kent* not by adopting better, more fulsome procedures for determining whether a child should be transferred to criminal court, but by making "it easier for the state to transfer juveniles to adult court and significantly limited--or, in some cases, eliminated completely--the role of the juvenile judge and the child's counsel in juvenile court." Katherine I. Puzone, *An Eighth Amendment Analysis of Statutes Allowing or Mandating Transfer of Juvenile Offenders to Adult Criminal Court in Light of the Supreme Court's Recent Jurisprudence Recognizing Developmental Neuroscience*, 3 Va. J. Crim. L. 52, 64 (2015). Indeed, Proposition 21, which gave prosecutors discretion to charge certain juveniles 14 or older directly in criminal court

13

instead of juvenile court, was passed in 2000, nearly four decades after *Kent* held that the failure to hold a transfer hearing in that case was reversible error. *O.G.*, 481 P.3d at 650.

Under *Kent*, this Court should hold that Jordan's due-process rights were violated by the district court's use of his California robbery convictions to enhance his federal sentence. Indeed, at the time those charges were filed in criminal court, there was *no* process: no hearing; no testimony; no evidence; and no findings. Instead, the prosecutor unilaterally filed the charges in adult criminal court, where Jordan ultimately pled guilty and served two prison sentences. Those two convictions are the sole convictions being used to make him a career offender and enhance his present sentence. Nor was there any process employed by the district court here to determine whether use of the robbery convictions to enhance his sentence passed constitutional muster. *See* Sent. Tr. 12. The unblinking use of these robbery convictions to enhance Jordan's federal sentence perpetuates the constitutional problems with those convictions and sentences.

14

Because those convictions were obtained in violation of Jordan's due-process rights, they should not now be used to enhance his sentence. His sentence should be vacated, and the case remanded for resentencing.

**2. Jordan's Eighth Amendment rights were violated.**

Application of California's direct-file statute also violated the Eighth Amendment's prohibition against cruel and unusual punishments. *Miller* explored some of the problems with transfer statutes, including: "several States at times lodge this decision exclusively in the hands of prosecutors, again with no statutory mechanism for judicial reevaluation"; "those prosecutorial discretion laws are usually silent regarding standards, protocols, or appropriate considerations for decisionmaking"; and "transfer decisions often present a choice between extremes: light punishment as a child or standard sentencing as an adult." 567 U.S. at 487–89.

At least one commentator has argued that "[a]pplying the Court's Eighth Amendment jurisprudence to mandatory transfer and direct file statutes leads to the conclusion that such statutes are unconstitutional," because the "Court's recognition of the diminished culpability of juvenile offenders and the impact that other individualized factors, such as

15

Appellate Case: 24-1663     Page: 24     Date Filed: 06/03/2024 Entry ID: 5399952

cognitive function and social history, have on culpability requires an individualized hearing before a juvenile judge before a case can be transferred to adult criminal court for prosecution." Puzone, 3 Va. J. Crim. L. at 86.

Consistent with *Miller*, *Graham*, and *Roper*, this Court should conclude that using Jordan's two California robbery convictions to enhance his sentence violates the Eighth Amendment, for two reasons. First, those cases reveal how juveniles are different. And before subjecting a juvenile to the toughest punishments—e.g., adult sanctions for offenses committed as a child—a court should make an individualized assessment of the factors weighing in favor or against a particular sentence. No weighing was done here. Instead, the California prosecutor unilaterally filed the charges in adult criminal court. No hearing was held. No judge made a finding that public safety or the needs of the child were best served by adult prosecution. The procedures employed—which consisted of simply deciding to file and then filling the charges in adult criminal court—were constitutionally deficient.

Second, the *Miller*, *Graham*, and *Roper* line of cases is based in large measure on the Court's longstanding recognition that the Eighth

16

Amendment is not "static" but "must draw its meaning from the evolving standards of decency that mark the progress of a maturing society." *Trop v. Dulles*, 356 U.S. 86, 101 (1958); *see also Graham*, 540 U.S. 76; *Roper*, 543 U.S. at 566-67; *Miller*, 567 U.S. at 470.

California Proposition 57 and Senate Bill 1391 are proof that the standards of decency have shifted and reveal a move away from the prosecution of children in adult court. "The national trend is moving in this direction; states across the country have passed legislation to roll back some of the expansions to juvenile transfer laws that existed in the 1990s, making it more difficult to process juveniles in adult court." Beth Caldwell, *Shifting the Paradigm: An Abolitionist Analysis of the Recent Juvenile Justice "Revolution"*, 23 Nev. L.J. 115, 145 (2022). Since 2005 alone, "36 states and Washington, D.C. have passed 70 pieces of legislation to move youth out of the adult criminal justice system," including many States, like California, that have "raised the minimum age of transfer to adult court." *Id.* (quotation omitted). Perhaps the greatest proof of the "evolving standards of decency" is that "[s]eventy percent fewer juveniles are prosecuted in adult court now than in 2000." *Id.*

Appellate Case: 24-1663     Page: 26     Date Filed: 06/03/2024 Entry ID: 5399952

If a 15-year-old committed a robbery in California today, he couldn't be prosecuted in adult criminal court. But back when Jordan committed a robbery when he was 15 years old in 2004, the prosecutor could unilaterally file charges in adult court. That's exactly what happened, and Jordan was ultimately convicted and sentenced to 9 years imprisonment for the juvenile offense. PSIR 14.

Similarly, if a 16-year-old committed a robbery in California today, he could be tried in adult court, but only after the case was first commenced in juvenile court, which would then be required to hold a "'transfer hearing' to determine whether the matter should remain in juvenile court or be transferred to adult court." *People v. Superior Ct. (Lara)*, 410 P.3d 22, 23–24 (Cal. 2018). "Only if the juvenile court transfers the matter to adult court can the juvenile be tried and sentenced as an adult." *Id.* But here, Jordan was directly charged in adult court, convicted, and received a three-year prison sentence. PSIR 15.

Those nine-year and three-year terms have now multiplied, as the underlying convictions are being used to enhance Jordan's federal drug-conspiracy sentence. This Court should not compound the constitutional deficiency of Jordan's two California robbery convictions by using them

18

to make Jordan a career offender. Instead, this Court should hold that application of those two convictions to enhance his sentence here violates the Eighth Amendment's prohibition against cruel and unusual punishment.

### D. The PSIR Mis-Calculated Jordan's Prior Criminal History.

Alternatively, this Court should vacate Jordan's sentence and remand for resentencing because the PSIR mis-calculated his prior criminal history. Specifically, the PSIR awarded him three criminal-history points for two California possession-of-a-firearm convictions from 2017. PSIR 16. But those convictions were vacated on appeal for lack of sufficient evidence. *People v. Jordan*, No. B280325, 2019 WL 625199, at *1 (Cal. Ct. App. Feb. 14, 2019) ("We agree that there was no substantial evidence to support a finding that Jordan had actual or constructive possession of a firearm, and on that basis, reverse his judgment of conviction.").

It's true that the inclusion of these convictions did not ultimately impact his criminal-history category, because he was deemed a category VI career offender under USSG § 4B1.1(b). PSIR 17. Nonetheless, Jordan is entitled to resentencing because it's possible the district court would have given him a lesser sentence if it had an accurate picture of Jordan's

19

criminal history. Although Jordan did not object to this error prior to sentencing, the incorrect criminal-history score is a plain error that affected his substantial rights and that seriously affected the fairness of the sentencing proceedings. *See United States v. Comstock*, 154 F.3d 845, 850 (8th Cir. 1998) (finding plain error in sentencing and remanding for resentencing); *see also United States v. Coleman*, 148 F.3d 897, 904 (8th Cir. 1998) (remanding "for resentencing using the correct category").

## CONCLUSION

"[C]hildren are different for sentencing purposes." *Brown v. Precythe*, 46 F.4th 879, 890–91 (8th Cir. 2022) (Kelly, J., dissenting). This is no less true when—as here—a sentence imposed on a juvenile later enhances an adult sentence, as it is when—as in the *Miller* line of cases—the sentence being reviewed is a sentence imposed on a juvenile offender. The fact animating the *Miller* line of cases—that "juvenile offenders, with their transient rashness, proclivity for risk, and inability to assess consequences, are in the eyes of the Constitution less morally culpable," *id.* (cleaned up)—applies with equal force here. Dedrick Jordan amply paid his debt to society for committing two robberies when he was a child, spending years in prison. He should not now be required to spend more

20

time in prison on the sole ground that—prior to *Miller*, *Graham*, and *Roper* being decided—a California prosecutor opted to treat him as an adult, not as a child. His sentence should be vacated, and the case remanded to the district court for resentencing.

Respectfully submitted,

**DEDRICK DESHON JORDAN**

By his attorney:

s/ Jeffrey Wald

_____

Jeffrey Wald (MN Bar # 0396344)
NELSON MULLINS RILEY & SCARBOROUGH LLP
380 Knollwood Street, Suite 530
Winston Salem, NC 27103
Telephone: (336) 774-3335
Facsimile: (336) 774-3299
jeffrey.wald@nelsonmullins.com

Dated: May 24, 2024

21

# CERTIFICATE OF COMPLIANCE

I HEREBY CERTIFY that this Appellant's Brief complies with the page limits of Rule 32(a)(7), Federal Rules of Appellate Procedure, contains 4206 words, omitting those sections that are permitted to be excluded, and is prepared using Microsoft® Word for Microsoft 365 MSO, and Century Schoolbook, a proportionately spaced typeface, in 14-point font.

/s/ Jeffrey Wald
Jeffrey Wald

# STATEMENT OF SCAN FOR VIRUSES

The undersigned counsel for Appellant certifies that this brief and the addendum filed concurrently comply with the requirements of Eighth Circuit Rule 28A(h), in that they have been scanned for computer viruses, and are virus free.

/s/ Jeffrey Wald
Jeffrey Wald

Appellate Case: 24-1663    Page: 31    Date Filed: 06/03/2024 Entry ID: 5399952

# CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that on June 3, 2024, I filed the Corrected Appellant's Brief and Addendum on behalf of Dedrick Deshon Jordan using the Court's CM/ECF system, and it will be served upon Appellee.

/s/ Jeffrey Wald
Jeffrey Wald

23

Appellate Case: 24-1663    Page: 32    Date Filed: 06/03/2024 Entry ID: 5399952